UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| DAVARIOL MARQUAVIS TAYLOR, | Case No. 22-10178 |
|---|---|
| Plaintiff, | Honorable Thomas L. Ludington |
| | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| PURDOM, *et al.*, | |
| Defendants. | |

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 29]**

## I.      Introduction and Background

Plaintiff Davariol Marquavis Taylor, a prisoner proceeding pro se, sues Michigan Department of Corrections (MDOC) employees John Purdom, John Bean, Caveeta Johnson, and Kingsley Itota under 28 U.S.C. § 1983, alleging that they failed to protect him, retaliated against him, and were deliberately indifferent to his medical needs.  ECF No. 1.  The Honorable Thomas L. Ludington referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 18.

Taylor, who was housed at Macomb Correctional Facility (MRF), says that his cellmate stabbed and raped him in September 2021.  ECF No. 1,

PageID.4.  He alleges that he told Corrections Officer (C.O.) Sergeant Purdom the next day, but that Purdom "did nothing."  *Id.*  Taylor alleges that he was stabbed again that night and that he told the night nurse that he "fears for his life because he got stabbed and raped twice."  *Id.* (cleaned up).  Taylor says that he called the Prison Rape Elimination Act (PREA) hotline and wrote a grievance about Purdom "not doing anything or not moving me out of that cell," and that Purdom retaliated against him by placing him "on suicide watch and not protective custody."  *Id.*  Taylor alleges that Purdom also retaliated against him by preventing Nurse Bean from writing a report, and that Nurse Bean and case manager Johnson did not help him.  *Id.*

Taylor also claims that Purdom retaliated against him throughout October 2021 "by throwing away all his clothes, legal work, property, and by trying to place him in the same unit and cell again."  *Id.* (cleaned up).  And Taylor says that when he refused to go back to the same cell, Purdom made an officer write him a false misconduct ticket for disobeying a direct order.  *Id.*, PageID.4, 11.  Taylor then alleges that, as he was headed to make a PREA phone call the next month, C.O. Itota "assaulted him by kicking him in the leg and the foot."  *Id.*, PageID.5.  Itota then allegedly "slammed [Taylor's] hand in the cell door" after Taylor reported Itota to

2

PREA.  *Id.*  Taylor says that he told Johnson about the incident, but she "did nothing and told no one as well."  *Id*.

Defendants move for summary judgment, alleging that Taylor failed to exhaust his administrative remedies.  ECF No. 29.  When Taylor did not respond to the motion, this Court ordered him to show cause in writing "why the claims against him should not be dismissed for the reasons described in the motion for summary judgment."  ECF No. 36.  Taylor filed a response to the order to show cause that this Court treats as a response to defendants' motion.  ECF No. 37.  For the reasons below, the Court **RECOMMENDS** that defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

## II.    Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the lack of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id*. at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion."  *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

As noted, defendants claim that Taylor failed to exhaust available administrative remedies.  The Prison Litigation Reform Act (PLRA) requires prisoners to properly exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  To meet this requirement, an inmate

4

must strictly comply with the administrative process provided by the prison.

*Woodford*, 548 U.S. at 93-94.  But if an administrative remedy "is not

capable of use to obtain relief," it is not "available," and § 1997e will not act

as a barrier to suit.  *Ross v. Blake*, 578 U.S. 632, 643 (2016).

Failure to exhaust administrative remedies is an affirmative defense,

which the defendant has the burden to plead and prove by a

preponderance of the evidence.  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir.

2015).  "But a prisoner countering a motion alleging failure to exhaust must

offer competent and specific evidence showing that he indeed exhausted

his remedies, or was otherwise excused from doing so."  *Parks v. Mich.

Dep't of Corr.*, No. 2:20-cv-11673, 2021 WL 3533422, at *3 (E.D. Mich.

May 17, 2021), *adopted*, 2021 WL 2820984 (E.D. Mich. July 7, 2021)

(cleaned up).  Summary judgment based on failure to exhaust

administrative remedies is not on the merits and thus requires dismissal

without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

**B.**

A claim of retaliatory misconduct cannot be exhausted through the

grievance process.  MDOC Policy Directive (PD) 03.02.130 states that

decisions about misconducts are non-grievable and must be challenged

through a hearing.  *See* ECF No. 29-2, PageID.87-88, ¶ J(9), (11).  Thus,

5

the "only avenue" for exhausting a claim stemming from a misconduct ticket is by raising it at the misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011); *Smith v. Pallas*, No. 18-1933, 2019 WL 7946345, at *3 (6th Cir. Nov. 7, 2019). To fully exhaust, the prisoner must raise the claim of retaliation at the initial hearing and, if unsuccessful, in the available avenues for rehearing or appeal. *McNees v. Torrey*, No. 1:19-CV-121, 2021 WL 1178627, at *4 (W.D. Mich. Mar. 4, 2021), *adopted*, 2021 WL 1171958 (W.D. Mich. Mar. 29, 2021); *Triggs v. Barnhardt*, No. 2:20-CV-8, 2021 WL 6550824, at *5 (W.D. Mich. Dec. 16, 2021), *adopted*, 2022 WL 170062 (W.D. Mich. Jan. 19, 2022); *see also* MDOC PD 03.03.105, ¶¶ SSS-XXX (describing the rehearing and appeal processes).

Defendants argue that Taylor failed to exhaust his administrative remedies for his retaliatory misconduct claim because he failed to appeal the finding of guilt after the misconduct hearing. ECF No. 29, PageID.80. The Court agrees. Taylor raised retaliation during the hearing on the misconduct for disobeying a direct order to move to a housing unit. ECF No. 38, PageID.176. He reported that he did not understand why the officer told him to return to that unit after being raped and stabbed, claiming that his "testimony is PREA retaliation because I called the hotline on these two staff members and they refused to put me in protective custody." *Id.*

(cleaned up).  The administrative law judge (ALJ) found Taylor guilty.  *Id.*, PageID.177.  Mona Golson, an MDOC litigation coordinator, states in an affidavit that she "reviewed the records and attests that Taylor did not seeking rehearing" for this misconduct ticket.  *Id.*, PageID.173 (cleaned up).  In his response to the motion, Taylor presented no argument or evidence to rebut Golson's claim that he failed to seek a rehearing after he was found guilty of misconduct.  ECF No. 37.

Thus, summary judgment of Taylor's retaliatory misconduct claim should be granted.

## C.

The Court now turns to Taylor's allegations outside the misconduct hearing process.  MDOC PD 03.02.130 (effective March 18, 2019) has a three-step procedure that prisoners must follow to complete the administrative review process and properly exhaust grievances.  ECF No. 29-2.  If prisoners do not follow the "critical procedural rules," they do not exhaust administrative remedies.  *See Woodford*, 548 U.S. at 90.  And the PLRA requires that prisoners exhaust administrative remedies before filing lawsuits.  42 U.S.C. § 1997e(a).

Supporting their argument that Taylor failed to exhaust his claims through the PD 03.02.130 grievance process, defendants submit a certified

grievance report showing that Taylor filed two Step I grievances in November 2021—MRF-21-11-2563-28b and MRF-21-11-2560-28e. ECF No. 29-3, PageID.97. Taylor did not exhaust those grievances through Step III before filing his complaint.

Step III grievances must be directed to the Grievance Section, which will "generally respond[ ] within 60 business days." PD 03.02.130, ¶ II. Thus, Taylor had to wait "to receive a Step III response, or allowing the 60-business-day period to expire, before filing his complaint in federal court." *Beal v. Washington*, No. 1:21-CV-522, 2022 WL 17094179, at *4 (W.D. Mich. Oct. 18, 2022), *adopted*, 2022 WL 17093505 (W.D. Mich. Nov. 20, 2022). The Grievance Section received Taylor's Step III appeals for both grievances in January 2022. ECF No. 29-3, PageID.97. The rejections were upheld in March 2022. *Id.* Taylor filed his complaint in November 2021,[1] before the Step III grievances were received, let alone exhausted. *See* ECF No. 1. Thus, Taylor's claims against defendants were not exhausted through the grievance process before he filed suit.

---

[1] Taylor filed his complaint in the Western District of Michigan in November 2021 and it was transferred to this Court in January 2022. ECF No. 1.

**D.**

Defendants also argue that Taylor exhausted no claims through the

PREA process because he filed his complaint before the PREA

investigation was finished.  ECF No. 29, PageID.80.  They rely on Golson's

affidavit, in which she states that Taylor called the PREA hotline three

times in October 2021 and alleged that staff failed to address his claim that

he was raped and retaliated against him for calling the PREA hotline.  ECF

No. 38, PageID.174.  Golson said that Taylor filed his complaint before his

PREA complaint was closed in February 2022 with a finding that there was

insufficient evidence to support his claims.  *Id*.  She attaches an email

chain between C.O. Sergeant Inger and MDOC Inspector Eric Herbert in

which Inger reported Taylor's allegations of sexual abuse and Herbert said

that the matter was being investigated.  *Id*., PageID.180.

But defendants show no evidence that Taylor was notified that a

PREA investigation was started nor concluded.  They also fail to describe

how a prisoner exhausts his PREA remedies, and their scant description of

the PREA policy offers no clues.  *See* ECF No. 29, PageID.79-80.

A prisoner is excused from the exhaustion requirement when "an

administrative scheme might be so opaque that it becomes, practically

speaking, incapable of use.  In this situation, some mechanism exists to

provide relief, but no ordinary prisoner can discern or navigate it." *Ross*

578 U.S. at 643–44.  In 2019, the Sixth Circuit found that the "MDOC PREA

grievance process is, in practice, filled with contradictions and

machinations, and these contradictions and machinations render the

process incapable of use." *Does 8-10 v. Snyder*, 945 F.3d 951, 965 (6th

Cir. 2019) (cleaned up).  Though MDOC has amended its PREA policy,

mystery about how to exhaust a PREA claim remains.

The procedure for prisoners to report sexual abuse and sexual

harassment, MDOC PD 03.03.140 (effective April 5, 2021), "eliminated the

administrative grievance procedure for addressing prisoner grievances

regarding sexual abuse."  ECF No. 29-6, PageID.131, ¶ VV.  The policy

states, "*If* prisoners utilize the prisoner grievance system to report an

allegation of sexual abuse, the facility Grievance Coordinator shall forward

the sexual abuse to the facility PREA Coordinator for further handling."  *Id*.,

PageID.131, ¶ VV (emphasis added).  Thus, PD 03.03.140 permits, but

does not require, a prisoner to use the normal grievance process to report

sexual abuse.  *Id*.  In the same vein, PD 03.03.140 says that a prisoner

"*may* utilize the prisoner grievance system" to report sexual harassment or

retaliation.  *Id*., ¶ WW (emphasis added).  The current version of the

grievance process, PD 03.02.130, also eliminated the requirement that

10

prisoners exhaust complaints about sexual abuse through its three-step process.  *See* ECF No. 29-2, PageID.86, ¶ D; *Miller v. Klee*, No. 17-11006, 2018 WL 1354473, at *6 (E.D. Mich. Feb. 23, 2018), *adopted*, 2018 WL 1326382 (E.D. Mich. Mar. 15, 2018) (describing earlier version of PD 03.02.130).

The current version of PD 03.03.140 lacks strict requirements for making PREA claims.  Prisoners have many choices for reporting prohibited conduct "verbally or in writing regardless of when the incident was alleged to have occurred."  ECF No. 29-6, PageID.131, ¶ U.  The policy requires no specific form for reporting except for prisoners who wish to report sexual misconduct after they have been discharged.  *Id*.  And the policy describes no requirement or method for prison officials to provide written notice to a prisoner about the handling of a prisoner's PREA claim except that prisoners must be notified in writing if an administrative grievance alleging sexual abuse is removed from the grievance process for handling by the PREA Coordinator.  *Id*., PageID.131, ¶ VV.  Otherwise, the only indication that an alleged victim would be notified that a PREA investigation had begun a requirement that an investigator interview the alleged victim or complainant, the alleged perpetrator, and alleged witnesses.  *Id*., PageID.133, ¶ FFF.

11

If allegations of sexual abuse or harassment are substantiated, the facility must notify the victim of any related charges or convictions.  *Id*., PageID.134, ¶¶ KKK, LLL.  And a prisoner who has reported sexual misconduct must be monitored for protection from retaliation for at least 90 days unless the allegations of misconduct are determined to be unfounded. *Id*., PageID.134, ¶ PPP.  But the policy does not require that an investigation be completed within 90 days or any particular period, and it includes no requirement that a prisoner be notified if his allegations are found unsubstantiated.

So while defendants argue that Taylor exhausted no claims through "the PREA investigation process," the Court cannot discern the process to which they refer.

And the evidence defendants rely on fails to enlighten the Court about how Taylor would know that his PREA claims were being investigated when he filed his complaint in November 2021 or about how Taylor would know when any investigation would be complete.  Inspector Herbert wrote in an October 18, 2021 email to another MDOC official that Taylor's allegations were "being investigated as sexual abuse."  ECF No. 38, PageID.180.  But there is no record of Taylor being notified of the investigation.

12

Taylor had good reason to believe that his claims were not being investigated; his misconduct hearing began on October 19, 2021, the day after Inspector Herbert reported by email that Taylor's allegations were being investigated.  ECF No. 38, PageID.175.  On the same day as the hearing, the ALJ found Taylor's allegations that he was sexually abused by another inmate not credible and found Taylor guilty of disobeying an order. *Id*., PageID.176-177.  The ALJ's list of evidence included a statement from Inspector Herbert.  *Id*., PageID.175.  Why would Taylor believe that Inspector Herbert was investigating his PREA claims after the ALJ's findings?

Even if Taylor had known that Inspector Herbert had initiated an investigation, the PREA policy included no guidelines for when that investigation would be concluded, as noted above.  And Golson shared no documents to support her claim that the investigation into Taylor's claims closed in February 2022 nor any report of the investigation results.

Defendants fail to show that MDOC's PREA policy or the communication to Taylor would permit an ordinary prisoner to discern how to exhaust his PREA claims.  Taylor should therefore be excused from the exhaustion requirement when it comes to his claims that Purdom and Itota retaliated against him for his PREA reports.  *Ross* 578 U.S. at 643–44.

13

## III.    Conclusion

The Court **RECOMMENDS** that defendants' motion for summary

judgment (ECF No. 29) be **GRANTED IN PART AND DENIED IN PART**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: March 30, 2023

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's

findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2).  If a party fails to timely file specific objections, any further appeal

is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And

only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of

objections, **any non-objecting party must file a response** to the

objections, specifically addressing each issue raised in the objections in the

14

same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2023.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager