UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVARIOL MARQUAVIS TAYLOR JR.,

        Plaintiff,                              Case No. 1:22-cv-10178

v.                                                   Honorable Thomas L. Ludington
                                                       United States District Judge
JOHN PURDOM, JOHN BEAN,
CAVEETA JOHNSON, and KINGSLEY ITOTA,      Honorable Elizabeth A. Stafford
                                                       United States Magistrate Judge
        Defendants.
_____/

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION IN PART, DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND STAYING CASE FOR 90 DAYS TO SEEK *PRO BONO* APPOINTED COUNSEL**

Plaintiff Davariol Marquavis Taylor Jr., a prisoner proceeding *pro se*, is suing four employees of the Michigan Department of Corrections (MDOC) under 28 U.S.C. § 1983, alleging they failed to protect him from his cellmate repeatedly stabbing and raping him, retaliated against him for reporting it, and were deliberately indifferent to his resulting medical needs. ECF No. 1. Defendants seek summary judgment arguing Plaintiff did not exhaust his administrative remedies. ECF No. 29.

On March 30, 2023, Magistrate Judge Elizabeth A. Stafford issued a report recommending dismissal of all but Plaintiff's "claims that [John] Purdom and [Kingsley] Itota retaliated against him for his PREA report." ECF No. 40. The Parties received 14 days to object, but they did not do so. They have therefore forfeited their right to appeal Judge Stafford's findings. *See Berkshire v. Dahl*, 928 F.3d 520, 530–31 (6th Cir. 2019) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

However, "[t]he district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a).

I.

While incarcerated at Macomb Correctional Facility, Plaintiff alleges he was stabbed and raped by his cellmate Cherry on September 30 and October 1, 2021. ECF No. 1 at PageID.4. He claims that after informing Corrections Officer Purdom the following day, no action was taken. *Id.* Plaintiff also asserts that he reported the incidents to the Prison Rape Elimination Act ("PREA") hotline and filed a grievance against Purdom for failing to address the situation and provide a safer cell. *Id.* Purdom allegedly retaliated by placing Plaintiff on suicide watch instead of providing protective custody. *Id.* Plaintiff also claims that Purdom obstructed Nurse John Bean from filing a report, and that neither Bean nor Case Manager Caveeta Johnson would help him. *Id.* Purdom allegedly continued to retaliate against Plaintiff throughout October 2021 by discarding his belongings and attempting to place him back in the same cell with Cherry. *Id.*

When Plaintiff refused to return to the same cell where Cherry raped and stabbed him twice, Purdom allegedly coerced another officer into issuing a false misconduct ticket for disobeying a direct order. *Id.* at PageID.4, 11. The following month, Corrections Officer Itota allegedly "kick[ed] him in the leg and the foot" while he was headed to make a PREA call and intentionally "slammed [his] hand in the cell door" afterward. *Id.* at PageID.5. Plaintiff states that he informed Johnson who did nothing. *Id.* A virtual misconduct hearing was held in October 2021 regarding Plaintiff's purported failure to obey the direct order to return to the cell where he was raped and stabbed twice. ECF No. 38 at PageID.175–79.

In November 2021, Plaintiff filed two Step I grievances and then filed this lawsuit. *See* ECF Nos. 1; 29-3 at PageID.97. The case was transferred to this Court on January 27, 2022, *id.*, and three days later Plaintiff progressed both his relevant grievances to Step III of the MDOC

process,[1] ECF No. 29-3 at PageID.97. Nearly a year later, Defendants filed a motion for summary judgment, asserting Plaintiff failed to exhaust his administrative remedies. ECF No. 29. Despite Plaintiff's initial lack of response, he was ordered to explain in writing why his claims "should not be dismissed for the reasons described in the motion for summary judgment." ECF No. 36. Plaintiff filed a response, ECF No. 37, and the Magistrate Judge issued a report recommending dismissal of all but one of his claims, ECF No. 40.

## II.

Congress enacted the PLRA to "reduce the quantity and [to] improve the quality of prisoner suits." *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (citations omitted). To that end, Congress decreed that "[n]o action shall be brought with respect to prison conditions under [federal law] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The exhaustion requirement is intended "to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006)). The Supreme Court has held that prisoners must complete "proper exhaustion," i.e., must use "all steps that the [prison] holds out." *Woodford*, 548 U.S. at 90. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Until 2007, the Sixth Circuit imposed "several procedural rules designed to implement this exhaustion requirement and facilitate early judicial screening" of prisoner claims. *Id.* at 202–03; *see, e.g.*, *Burton v. Jones*, 321 F.3d 569, 574–75 (6th Cir. 2003). The Supreme Court held that

---

[1] It is unclear whether or when Step II was reached, but neither party has mentioned the issue as relevant to the case.

these rules exceed the scope of the PLRA, and that "crafting and imposing them exceeds the proper limits on the judicial role." *Bock*, 549 U.S. at 203. For example, the Supreme Court held that the Sixth Circuit rule requiring prisoners to identify each defendant to be sued in their first grievance "lack[ed] a textual basis in the PLRA." *Id.* at 217. The emphasis, then, is on the grievance procedures themselves under "usual procedural practice" and "normal pleading rules." *Id.* at 214, 218; *Lamb*, 52 F.4th at 292. In addition, only remedies that are "available" must be exhausted. 42 U.S.C. § 1997e. A grievance process is not considered available if officers are "unable or consistently unwilling" to provide relief, a process is "so opaque" as to be "incapable of use," or prison employees "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

Failure to exhaust administrative remedies is an affirmative defense that must be raised and proved by a defendant. *Bock*, 549 U.S. 199, 218; *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). "But a prisoner countering a motion alleging failure to exhaust 'must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so.'" *Parks v. Mich. Dep't of Corr.*, No. 2:20-CV-11673, 2021 WL 3533422, at *3 (E.D. Mich. May 17, 2021) (quoting ), *adopted*, 2021 WL 2820984 (E.D. Mich. July 7, 2021) (cleaned up). Summary judgment based on failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

Thus, a genuine question of fact as to whether the plaintiff exhausted the administrative remedies or whether the remedies were available are both jury-triable questions.

### III.

### A.

The report concluded that Plaintiff "failed to exhaust his administrative remedies for his

retaliatory misconduct claim because he failed to appeal the finding of guilt after the misconduct hearing." ECF No. 40 at PageID.190. Specifically, the report finds that Plaintiff "did not seek rehearing" after he "raised retaliation during the hearing on the misconduct for disobeying a direct order to move to a housing unit" where "[t]he administrative law judge (ALJ) found [him] guilty." *Id.* at PageID.190–91 (citations omitted).

A claim of retaliatory misconduct cannot be exhausted through the grievance process. Decisions about misconducts are nongrievable and must be challenged through a hearing. *See* ECF No. 29-2 at PageID.87–88 (citing MDOC Policy Directive 03.02.130, Prisoner/Parolee Grievances ¶¶ J(9), (11) (effective Mar. 18, 2019)). Thus the "only avenue" for fully exhausting a claim stemming from a misconduct ticket is to raise it at the misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693–94 (6th Cir. 2011). To that end, the prisoner must raise the claim of retaliation at the initial hearing and, if unsuccessful, in the available avenues for rehearing or appeal. *McNees v. Torrey*, No. 1:19-CV-00121, 2021 WL 1178627, at *4 (W.D. Mich.), *adopted*, 2021 WL 1171958 (W.D. Mich. Mar. 29, 2021); *see also* MDOC Policy Directive 03.03.105, Prisoner Discipline ¶¶ SSS–XXX (effective July 1, 2018) (describing the rehearing and appeal processes).

But a reasonable juror could infer that Defendants withheld the necessity or availability of a rehearing from Plaintiff such that it was not available to him. Although the "failure to exhaust cannot be excused by his ignorance of the law or the grievance policy," the inmate must have "had at least constructive notice of the policy." *Napier v. Laurel Cnty.*, 636 F.3d 218, 222 n.2 (6th Cir. 2011). However, the hearing order does not mention any requirement or availability of rehearing or appeal, nor that Plaintiff was advised of them. *See* ECF No. 38 at PageID.175–77. Moreover, the hearing concluded "without a finding," *id.* at PageID.176, which Plaintiff did not receive until 10 days later, *id.* at PageID.177, so he could not have promptly sought rehearing or appeal.

Based on Plaintiff's unrebutted statements, it would be reasonable to infer that the officers at his facility have been thwarting his right and access to the courts and retaliating against him by throwing away and delaying his mail. ECF Nos. 1 at PageID.5 (alleging that Defendant Itota battered him while attempting to report a sexual assault); 27 at PageID.56 ("I never received any order from the Court about the filing fee."); 37 at PageID.163 (alleging that Defendants have been discarding his court papers or delivering them late). Further, the report concludes that Defendants have relied on "scant" policies of "mystery" of which Plaintiff had no notice in an attempt to demonstrate that he has not exhausted his administrative remedies. ECF No. 40 at PageID.193–97 ("So while defendants argue that Taylor exhausted no claims through 'the PREA investigation process,' the Court cannot discern the process to which they refer." (citing MDOC Policy Directive 03.03.140, Sexual Abuse and Sexual Harassment of Prisoners—Prison Rape Elimination Act (PREA) (effective Apr. 5, 2021))). For these reasons, it is reasonable to infer that the appeal or rehearing process was not "available" to Plaintiff. *See* 42 U.S.C. § 1997e(a).

**B.**

Second, the report concluded that Plaintiff failed to exhaust his administrative remedies by filing his federal complaint two months before his Step III grievances. ECF No. 40 at PageID.192.

Step III grievances must be directed to the Grievance Section, which will "generally respond[] within 60 business days." Policy Directive 03.02.130 ¶ II. Thus, Plaintiff had to wait "to receive a Step III response, or [to] allow[] the 60-business-day period to expire, before filing his complaint in federal court." *Beal v. Washington*, No. 1:21-CV-00522, 2022 WL 17094179, at *4 (W.D. Mich.), *adopted*, 2022 WL 17093505 (W.D. Mich. Nov. 20, 2022). The Grievance Section received Plaintiff's Step III appeals in January 2022, and the rejections were upheld in March 2022. ECF No. 29-3 at PageID.97. Because the complaint was filed in November 2021, the claims

were not exhausted through the grievance process before the lawsuit was filed. *See* ECF No. 1.

However, considering the purpose of administrative exhaustion and the delay in the grievance process, it would be reasonable to infer that Plaintiff administratively exhausted both grievances by filing the federal complaint when he did.

The purpose of administrative exhaustion has been satisfied, warranting review of the claims. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) ("And the State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim." ). The purpose of exhaustion is "so that the agency addresses the issues on the merits." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Here, MDOC had this opportunity and used it to deny Plaintiff's Step III grievances two months after he filed them, which was before this Court had the opportunity to review them. ECF No. 40 at PageID.192. In sum, though the federal complaint was filed before the grievances began the Step III process, that process was completed before the merits of the federal complaint were reviewed, so it makes more sense to review the claims than to dismiss them without prejudice to be refiled and reviewed later.

Further, as the report notes, Step III grievances often do not receive a response within 60 days. ECF No. 40 at PageID.192. Numerous scenarios can be inferred by which Plaintiff would not have been able to file his complaint if he had waited possibly more than 60 days to do so. Indeed, as he pleaded, he was ensuring he would get his "day in court." ECF No. 37 at PageID.162. In this way, Plaintiff administratively exhausted his grievances. *See Napier*, 636 F.3d at 224 ("Our Court has consistently analyzed whether an inmate's efforts to exhaust were sufficient under the circumstances, but in each case, the prisoner did *something*.") (collecting cases).

And the Sixth Circuit has emphasized that unexhausted claims may be considered in "unusual" or "exceptional" circumstances. *Rockwell v. Yukins*, 217 F.3d 421, 423 (6th Cir. 2000)

(quoting *O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir. 1996)); *see also Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) ("[P]ermitting plaintiffs to amend their complaints to allege newly exhausted claims is consistent with the purpose of the PLRA's exhaustion requirement."). It would be truly unusual and exceptional if prison officials destroyed or delayed the court filings of an inmate who filed a grievance against them for being deliberately indifferent to his reports of being repeatedly raped and stabbed by his cellmate—and, as explained above, there is a genuine dispute as to whether this is such a case.

## C.

Finally, this Court will attempt to furnish Plaintiff with appointed counsel to represent him in this case. The decision to appoint counsel is within the discretion of the court, and courts should appoint counsel only when the interests of justice or due process require it. *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986) (per curiam). Appointment of counsel is therefore warranted only if, given the difficulty of the case and the petitioner's ability, the petitioner (1) could not obtain justice without an attorney, (2) could not obtain a lawyer on his own, and (3) would have a reasonable chance of winning with the assistance of counsel. *United States v. Curney*, 581 F. Supp. 3d 910, 911 (E.D. Mich. 2022) (citing *Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 653 (E.D. Mich. 2002)); *accord United States v. Wright*, 596 F.Supp.3d 967, 968–69 (E.D. Mich. 2022) (same).

Based on the contentious relationship between Plaintiff and the facility's personnel, including his allegations about the destruction and delay of his mail, supported by his statement that he would send a filing that has yet to arrive, *see* ECF No. 37 at PageID.162, Plaintiff cannot obtain justice without an attorney. Further, he is unable to pay for an attorney. ECF No. 6. And, based on the egregious nature and the strength of his claims, Plaintiff has a reasonable chance of winning. Therefore, the interests of justice and due process require appointment of counsel here.

To that end, the case will be stayed until August 1, 2023, to seek *pro bono* counsel for Plaintiff. If not, then the stay will be lifted and Plaintiff must proceed *pro se*. *See, e.g.*, *Boussum v. Washington*, No. 1:22-CV-12232, 2023 WL 112460, at *1 (E.D. Mich. Jan. 5, 2023) (noting end of 90-day stay for unsuccessful attempt "to seek *pro bono* counsel" for inmate plaintiffs in case brought under 42 U.S.C. § 1983), *recons. denied*, 2023 WL 1819136 (E.D. Mich. Feb. 8, 2023).

## IV.

Accordingly, it is **ORDERED** that Judge Stafford's Report and Recommendation, ECF No. 40, is **ADOPTED IN PART** and **REJECTED IN PART**. It is **ADOPTED** to the extent that it concludes Plaintiff exhausted his administrative remedies; it is **DENIED** in all other regards.

Further, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 29, is **DENIED**.

Further, it is **ORDERED** that the case is **STAYED** until further order of this Court or until August 16, 2023, to find *pro bono* counsel for Plaintiff. Notice will be sent to Plaintiff either when an attorney accepts his case or the 90-day stay ends.

**This is not a final order and does not close the above-captioned case**.

Dated: May 18, 2023                                                         s/Thomas L. Ludington
                                                                                              THOMAS L. LUDINGTON
                                                                                              United States District Judge