UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVARIOL MARQUAVIS TAYLOR,

        Plaintiff,

v.

JOHN PURDOM, *et al.*,

        Defendants.
_____/

Case No. 1:22-cv-10178

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Davariol Marquavis Taylor was confined at the Macomb County Correctional Facility (MCF) in Lenox, Michigan from September through December 2021. While confined at MCF, Plaintiff maintains he was raped and stabbed by his cellmate, and alleges that various MCF employees failed to protect him from this violence, and retaliated against him after he reported it, in violation of his constitutional rights. But Plaintiff sues all MCF Defendants in their official capacities as Michigan Department of Corrections employees. Accordingly, all Defendants are entitled to Eleventh Amendment sovereign immunity to the extent Plaintiff seeks damages and retroactive injunctive relief. Although Plaintiff also arguably seeks prospective relief to prevent further physical harm while confined, Plaintiff's claim for such relief is moot because Plaintiff has not been confined at MCF for over three years. Thus, Defendants' joint motion for summary judgment will be granted, and Plaintiff's Complaint will be dismissed.

**I.**

**A.**

In 2014, Plaintiff Davariol Marquavis Taylor pleaded nolo contendere in state court to third-degree criminal sexual conduct. *See Michigan v. Taylor*, Case No. 14-039974-FC (Saginaw

Cnty., Mich. Dec. 16, 2014). Plaintiff was sentenced between four and 15 years of imprisonment. *See Offender Tracking Information System (OTIS)*, MICH. DEP'T OF CORR., https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=940436 (last visited Feb. 21, 2025). Plaintiff has been transferred between several correctional facilities since his sentence. *See* ECF No. 57-2 at PageID.281. But this case concerns what happened to Plaintiff while he was confined at Macomb County Correctional Facility ("MCF") in Lenox Township, Michigan.

Plaintiff was transferred to MCF on the evening of September 30, 2021. *See id.*; ECF No. 57-4 at PageID.295. That night, Plaintiff alleges his cellmate Kyle Cherry raped[1] and stabbed him. ECF No. 1 at PageID.4. Plaintiff also alleges that Cherry stabbed him again the following night on October 1, 2021, and "grabbed [his] butt." ECF No. 68-1 at PageID.398; ECF No. 1 at PageID.4. Notably, Cherry denied all allegations. ECF No. 57-8 at PageID.362. And Plaintiff's medical and mental health records suggest the allegations are unfounded. *See* ECF Nos. 57-3 at PageID.289 (noting that, when assessed by MCF medical staff shortly after the second alleged stabbing on October 1, 2021, Plaintiff had no "no signs of a stab wound", instead had a "dime sized scab" on his back that "resembled a healing abrasion"); 57-8 at PageID.360 (noting MCF determined Plaintiff "was not stabbed"); 57-7 at PageID.339 (noting Plaintiff's schizophrenia diagnosis); *see also* ECF No. 57-5 at PageID.322 (noting Plaintiff "was placed in a single man cell" at MCF such that he had "no cellmates").

---

[1] During his deposition, Plaintiff testified that Cherry "penetrate[d]" Plaintiff "with his penis" after learning about Plaintiff's sexual conduct conviction. ECF No. 68-1 at PageID.481. But Plaintiff expressly denied any penetration when he reported the alleged September 30, 2021 assault to MCF medical professionals and staff the next day, ECF No. 57-3 at PageID.288, and did not mention penetration in his interview throughout a Prison Rape Elimination Act investigation he initiated, ECF No. 57-8 at PageID.362 (noting Plaintiff instead alleged Cherry "made sexual advances by attempting to grab [Plaintiff's] buttock").

But this case involves the alleged conduct of various MCF officials, not Cherry's. Plaintiff alleges that he told MCF Sergeant John Purdom, MCF Nurse John Bean, and MCF Qualified Mental Health Professional ("QMHP") Caveeta Johnson about the "rape and stabbing," but that all three "did nothing" and failed to protect him. ECF No. 1 at PageID.4–5.

Plaintiff also reported the alleged rape and stabbing by calling the Prison Rape Elimination Act ("PREA") "hotline"[2] on October 4, 13, and 15, 2021. ECF No. 57-8 at PageID.361, 365–69. Although a subsequent internal PREA investigation found "insufficient evidence" that Cherry sexually assaulted Plaintiff, *id.* at PageID.362–63, Plaintiff alleges two MCF officers retaliated against him for reporting the alleged rape.

First, Plaintiff alleges Sergeant Purdom retaliated against his PREA reporting by (1) placing him on "suicide watch," (2) placing him in the same cell with Cherry, (3) instructing Nurse Bean to not report or document Plaintiff's injuries, (4) fabricating a misconduct report against Plaintiff, and (5) throwing away Plaintiff's "clothes, legal work, [and other] property. *See* ECF Nos. 1 at PageID.4; 1-1 at PageID.11. Notably, Sergeant Purdom averred under oath that he "had no knowledge" of Plaintiff's PREA calls, so he could not have retaliated against Plaintiff for them. ECF No. 57-5 at PageID.323. Moreover, Sergeant Purdom avers that (1) Plaintiff was "already" on suicide watch when he was "transferred to" Purdom's housing unit,[3] (2) Plaintiff did not share

---

[2] PREA was enacted in 2003, in part to "provide information, resources, recommendations, and funding to protect individuals from prison rape." Prison Rape Elimination Act, Pub. L. No. 108–79, 117 Stat. 972 (2003). Interpreting and enforcing PREA, the Department of Justice requires correctional facilities to "provide at least one way for inmates to report abuse or harassment to a public or private entity . . . that is not part of the [facility], and that is able to receive and immediately forward inmate reports of sexual abuse and sexual harassment to [facility] officials," 28 C.F.R. § 115.51, and requires facilities to promptly and thoroughly investigate all reports. *See* 28 C.F.R. §§ 115.71, 115.72, 115.73.

[3] Plaintiff "verbalized suicidal ideations to custody staff and was placed" on suicide watch on October 1, 2021. ECF No. 57-7 at PageID.355. As a result, Plaintiff was placed in a single

- 3 -

a cell with anyone, and Sergeant Purdom "had no control" over which cell Plaintiff was assigned; (3) he was "not involved in any" of Plaintiff's medical evaluations; (4) he was not involved in Plaintiff's misconduct report, which was written by another MCF officer because Plaintiff refused to leave his old housing unit ; and (5) he "was not involved in holding or storing [Plaintiff's] property" while Plaintiff was on suicide watch, and "did not throw" any of Plaintiff's property away. *Id.* at PageID.322–25.

Separately, Plaintiff alleges that Macomb County Correctional Officer Kingsley Itota retaliated against Plaintiff by "kick[ing] [him] in the leg" on the evening of November 2, 2021, while Plaintiff was "coming up the stairs . . . to make [a] PREA phone call" and later retaliated against Plaintiff for making this call by "slam[ing]" Plaintiff's hand in a cell door either late in the evening on November 2, or just after midnight on the morning of November 3, 2021. *Id.* at PageID.4; ECF No. 68-1 at PageID.527–29 (clarifying timeline). But Officer Itota avers he did not work at MCF on November 2, 2021, and did not arrive for his shift on November 3, 2021, until 2:00 PM. ECF Nos. 57-9 at PageID.374. And Officer Itota's affidavit is supported by MCF's staffing schedule. *See* 57-6 at PageID.328–29.

**B.**

On November 7, 2021, Plaintiff filed a *pro se* Complaint alleging that Sergeant Purdom, Nurse Bean, Officer Itota, and QMHP Johnson deprived him of his First, Eighth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 by failing to protect him, retaliating against him, and being deliberately indifferent to his medical needs.[4] *See* ECF No. 1. at PageID.5.

---

observation cell and his personal property was "secured and stored" during observation, in accordance with MCF policy. *See Id.* at PageID.353.

[4] Plaintiff initially filed his Complaint in the United States District Court for the Western District of Michigan. *See* ECF No. 1. But that venue was improper, so the case was transferred to this Court in January 2022. *See* ECF No. 3.

Importantly, Plaintiff sued each Defendant in their official—rather than individual—capacity. *Id.* at PageID.3. Plaintiff seeks $1,000,000 in compensatory damages, requests this Court "stop" the "raping and stabbing from happening to [him] again by placing [him] in protective custody", and requests that all Defendants be subject to "disciplinary action." *Id.* at PageID.6.

The above-captioned case was stayed throughout most of 2022 as the Parties participated in mediation, *see* ECF No. 7, but the stay was lifted on August 30, 2022 after these efforts were unsuccessful. ECF No. 15. On December 2, 2022, all Defendants filed a joint motion for summary judgment because, they argued, Plaintiff did not exhaust his administrative remedies. ECF No. 29. This Court denied the motion because Plaintiff's allegation that Sergeant Purdom withheld his legal mail raised a question as to whether the administrative remedies at MCF were sufficiently "available" to Plaintiff. *See* ECF No. 43.

Plaintiff thereafter received appointed *pro bono* Counsel, *see* ECF Nos. 45; 46, and this Court accordingly reopened discovery and set a new dispositive motion deadline. *See* ECF No. 48. On August 26, 2024, all Defendants filed a joint motion seeking summary judgment for reasons other than exhaustion. ECF No. 57. The prominent reason is sovereign immunity. *See id.*

## II.

"It is well established that" states—and state officials sued in their official capacities—"'possess[ ] certain immunities from suit in . . . federal courts.'" *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016) (quoting *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc)). This immunity "protects state treasuries" and affords states the "'dignity that is consistent with their status as sovereign entities.'" *Crabbs v. Scott*, 786 F.3d 426, 428 (6th Cir. 2015) (quoting *Fed. Mar. Comm'n v. S.C. State Ports Auth*., 535 U.S. 743, 760 (2002)); *see*

*also Ernst*, 427 F.3d at 598 (noting state sovereign immunity "flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution").

But sovereign immunity does not preclude a suit when the state has waived such immunity or otherwise consented to suit, or if Congress has expressly abrogated the state's immunity. *See Puckett*, 833 F.3d at 598. And sovereign immunity does not bar official capacity suits against state officials if the plaintiff seeks purely *prospective*—rather than *retroactive*—injunctive or declaratory relief, even if this relief has an "ancillary effect on the state treasury." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008); *see also Ex parte Young*, 209 U.S. 123, 159–60 (1908); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) ("[O]fficial-capacity actions for prospective relief are not treated as actions against the state.")

### III.

Plaintiff seeks $1,000,000 in damages, an injunction retroactively subjecting Defendants to "disciplinary action" for their past alleged unconstitutional conduct, and an injunction placing him in protective custody to prevent further physical harm. ECF No. 1 at PageID.6. The first two claims for relief are precluded by sovereign immunity, and the third must be dismissed as moot.

***Damages and Retroactive Relief.*** Plaintiff's claim for $1,000,000 in damages for his alleged "emotional distress[,] . . . pain[,] and suffering," *id.*, is barred by the Eleventh Amendment because all Defendants are subject to sovereign immunity. Although they worked at MCF, it is undisputed that Defendants Sergeant Purdom, Nurse Bean, Officer Itota, and QMHP Johnson were Michigan Department of Correction (MDOC) employees at all relevant times. *See* ECF Nos. 57-5 at PageID.321 (Purdom); 57-9 at PageID.373 (Itota); 57-10 at PageID.378 (Johnson); 57-12 at PageID.386 (Bean). And MDOC is "an arm of the state of Michigan," such that Plaintiff's official capacity suit against these Defendants is "no different from a suit against the State" itself. *McCoy*

*v. Michigan*, 369 F. App'x 646, 654 (6th Cir. 2010) (internal quotations omitted) (affirming district court dismissal of MDOC officials sued in their official capacity, finding all were entitled to sovereign immunity).

Defendants are similarly immune from Plaintiff's request that this Court subject them to "disciplinary action" for their alleged retaliation and deliberate indifference. ECF No. 1 at PageID.6. This requested injunction—which seeks to retroactively punish Defendants for their alleged past unconstitutional conduct—is squarely precluded by the Eleventh Amendment. *See S&M Brands*, 527 F.3d at 508 ("The *Ex parte Young* exception" to state sovereign immunity "does not . . . extend to any retroactive relief.").

No exceptions apply. Michigan has not waived its sovereign immunity. *See Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (noting states can waive sovereign immunity (1) through legislation, (2) by removing an action from state to federal court, or (3) by appearing without objection and defending a case on the merits[5]). Nor has Congress abrogated it. *Kerchen v. Univ. of Michigan*, 100 F.4th 751, 761 (6th Cir. 2024) ("Congress has not abrogated Michigan's immunity to suit under § 1983 claims."). Accordingly, Defendants are

---

[5] Although not argued by Plaintiff, one could argue that Defendants waived sovereign immunity because they did not raise the issue until August 2024, over two years *after* Plaintiff filed his Complaint. Although appealing at first glance, this argument lacks merit. The Supreme Court has explained that a sovereign immunity waiver must be "clear." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002) (finding state consented to suit and waived sovereign immunity by removing a case to federal court). Here, Defendants did not clearly waive their sovereign immunity by defending this case on the merits. To the contrary, Defendants expressly raised the issue of sovereign immunity in their first non-exhaustion dispositive motion, *before* asserting alternative arguments that Plaintiff's claims failed on the merits. *See Kerchen v. Univ. of Michigan*, 100 F.4th 751, 762 (6th Cir. 2024) (finding state defendant did not waive sovereign immunity because it "explicitly raised sovereign immunity as a defense" in its first dispositive motion). And although Defendants participated in mediation, nothing suggests efforts to resolve a case outside the legal system waive sovereign immunity.

immune from Plaintiff's claims to the extent he seeks $1,000,000 in damages and a retroactive injunction subjecting Defendants to disciplinary action..

Plaintiff does not argue to the contrary. Although sovereign immunity is Defendants' first argument supporting summary judgment, Plaintiff's Response ignores the issue altogether. Instead, Plaintiff's Response discusses *qualified* immunity, which does not apply to Plaintiff's *official*—as opposed to *individual*—capacity § 1983 claims. *See Novak v. Federspiel*, 728 F. Supp. 3d 552, 566 (E.D. Mich. 2024) ("If a government defendant is sued in their *official* capacity, qualified immunity does not apply[.]" (emphasis in original)).

**Moot, Prospective Injunctive Relief.** Plaintiff also asks this Court to "plac[e] him in protective custody" to "stop all th[e] stabbing and raping from happening . . . again." ECF No. 1 at PageID.6. Although this requested injunction is purely prospective and not barred by sovereign immunity, it must be dismissed as moot.

"When an inmate files suit against prison officials at the institution of his incarceration based upon those officials' wrongful conduct seeking declaratory and injunctive relief, and that inmate is subsequently transferred or released, courts routinely dismiss the declaratory and injunctive relief claims as moot." *Zeune v. Mohr*, No. 2:14-CV-153, 2015 WL 3544662, at *2 (S.D. Ohio June 4, 2015) (collecting cases); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (dismissing prisoner plaintiff's request for injunctive relief as moot because the plaintiff was transferred from the institution where he alleged unconstitutional conduct occurred); *Chambers v. Bouchard*, No. CV 20-10916, 2021 WL 429333, at *1 (E.D. Mich. Feb. 8, 2021) (same); *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (same) *see also Sossamon v. Texas*, 563 U.S. 277, 304 (2011) (Sotomayor, J., dissenting) (noting "a number of . . . suits

seeking injunctive relief have been dismissed as moot because the plaintiff was transferred from the institution where the alleged violation took place").

Here, Plaintiff has not been confined at MCF for over three years, and was transferred out of MCF on December 13, 2021. *See* ECF No. 57-2 at PageID.281. His request that this Court place him in protective custody to prevent further physical harm is thus moot. Although an exception to mootness exists for claims that are "capable of repetition, yet evade review," *Fredette v. Hemingway,* 65 F. App'x 929, 931 (6th Cir. 2003), such exception is inapplicable here. The "incapable of review" exception only applies if (1) the duration of the challenged conduct was so short that a corresponding claim could not be fully litigated before its "cessation or expiration" and (2) that the same plaintiff or complaining party will be subject to the same challenged conduct, again. *Id.* (citing *Sandison v. Mich. High Sch. Athletic Ass'n, Inc*., 64 F.3d 1026, 1029–30 (6th Cir.1995)). Here, even assuming arguendo that the duration of the Defendants' challenged conduct was sufficiently short, Plaintiff has no reasonable expectation of being transferred back to MCF, let alone being subject to the same alleged retaliation and deliberate indifference at the hands of MCF employees. Again, Plaintiff does not argue to the contrary and does not contest the mootness of his requested prospective injunctive relief whatsoever. *See generally* ECF No. 68.

### IV.

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 57, is **GRANTED.**

Further, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED.**

**This is a final order and closes the above-captioned case.**

Dated: February 27, 2025                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge